Next case is Founders Insurance of v. Flores. This is case number 516-0404. I'll state again for the record that Justice Cates is a participating member of the panel. She's not able to be here today. She will have the opportunity to hear the arguments as they are reported, and all of the briefing and records will be available to her to review. Counsel, for the appellant, you may proceed. Good morning, Your Honors. Sheri Shalmadyne for Founders Insurance Company. May it please the Court, Counsel. Your Honors, we have brought this appeal because it is Founders' position that the ruling of the trial court is inconsistent with its findings following the trial or during the trial. Founders filed its complaint for declaratory judgment based upon the rescission of the material misrepresentation made by Martin Flores Sr. during the application process. Under Illinois law, if a misrepresentation appears in an application, it may void a policy if it is material to the risk undertaken by the insurance company. The evidence in this record showed, by more than a preponderance of the evidence, that the misrepresentation in this case, which was Martin Flores Sr.'s failure to disclose his 17-year-old resident licensed son, Martin Flores Jr., as a household member. Founders presented testimony at trial that this misrepresentation would have resulted, had Mr. Flores Sr. been honest, in an $1,100 and change premium difference. So this was a significant difference. You're saying honesty. He lied in his application. Is that what you're saying? Yes. Now, was there any evidence that he was being spoken to by an agent or anything? Was he at an agent's? Yes. Mr. Flores and his wife went to the, I believe, Huffman Insurance Agency and spoke with a man named Mr. Williams. I thought the record showed that it was his son. Maybe I'm wrong. Did he have two sons? Was it his wife with him? I don't know how many children they have, but his younger son, whose name I don't believe is part of the record, accompanied him. We just want to know what's on the record. Okay. The testimony was that, after some confusion, the testimony was that Mr. Flores' younger son accompanied him to the agent. Not his wife. I believe his wife was there, too. Oh, okay. Well, that's what I was confused with. You said he and his wife, and I thought his son was. It was he and his son, but there were three people there. Possibly three. He sought insurance for himself and his wife. So I'm not sure if his wife was there, but I know that he was there and his younger son, who often accompanied him, according to the record, often accompanied him to help him understand things. He was not competent? Why didn't he understand things? Well, Spanish was his primary language. Did he have a secondary language? He said that he understood English, but he understood it less than more. But he never indicated to the agent that he wasn't understanding what he was saying. The son accompanied him to places to act as an interpreter for him, per se, if he was not understanding something. But Mr. Williams, I mean Mr. Flores, made no indication to Mr. Williams that he wasn't understanding what he was saying. Mr. Williams testified that he was nodding when Mr. Williams was talking as if he understood him. How old was his son? Pardon me? How old was this younger son that was with him? I believe he was 15 and fluent in English. The son was fluent in English and Spanish. But the fact of the matter is that the agent submitted an application to Founders after meeting with Mr. Flores Sr. and questioning him about what kind of coverages he wanted, what vehicles he wanted on the policy. And Mr. Flores brought with him a piece of paper that had that information on it. It had his name, his wife's name, their dates of birth, the make, model, and VIN numbers of the cars that they wanted insured. So he knew, Mr. Flores knew that this information was needed in order to apply for insurance for these vehicles. So he wasn't completely in the dark about what an agent might want or what information an agent might want in order to prepare an application on his behalf and to quote him an insurance policy through a company that could give him the most competitive rate. So this isn't a situation where Mr. Flores was completely blind to the whole process. That's just not the case, and that wasn't the evidence in the record. What was the evidence in the record is that the application submitted to founders did not include the name of Martin Flores, Jr., who obtained his driver's license, I believe, a year and four months prior to the date of application. He was 17 years old at the time and had lived in the household his entire life. His name was missing from the application. But based upon the information that was disclosed on the signed application, founders issued an insurance policy. Now there was some question I thought about. Who signed it? That was also a question. During the course of the litigation, both Martin Flores, Sr. and Jr. signed responses to requests to admit stating that it was Martin Flores, Sr.'s signature. I thought someplace it said it looked like Jr.'s. At trial it came out. That's where the record's made, right? Right, that it was Jr.'s signature. Well, not Martin Flores, Jr., the other son. Yeah, that's right, the other son. Right, that he signed for his dad, but he signed on his behalf. In the presence of the agent. Right. And it's a sole agency, or does he represent multiple insurance companies? He represents a multitude of insurance companies. And the only evidence of record, Your Honors, is that the Huffman agency and Mr. Williams were independent agents that offered the products of a multitude of insurance companies and various lines of coverage. And that Mr. Williams will typically run numbers and VIN numbers and the driver's data through a base to see which insurance company most competitively fits those people. So Founders does not have agents. All of these agents are independent agents that write insurance for a multitude of nonstandard insurance companies. Perhaps they have a few standard insurance companies in there. What do you mean? Pardon me? When you say standard and nonstandard, what do you mean? Standard insurance companies are the A-rated insurance companies like State Farm, Allstate, country companies. The nonstandard insurance companies are the ones that insure the higher-risk people that have poor driving records or poor credit. Founders is a higher-risk company. As is Apollo and Direct Auto and United, Equitable, and a whole host of others. But they're necessary to provide insurance for everybody since it is mandatory in the state of Illinois. The evidence in this record is that based upon the information disclosed on the application, Founders issued the policy. It then learned that Martin Flores, Jr. had been involved in an accident that was a very unfortunate accident. I'm going to back up to the signing of the policy or the application. Yes. I thought there was evidence that it was not Sr.'s signature. It was a 15-year-old sign for him. That is the evidence in the record. And the agent saw him sign it or wasn't around? The agent thought that it was the father's signature. That's what he testified. I didn't say his name, but did he see him sign it? He did not. He testified at trial. He testified at trial that he saw the father sign it. Did he ever talk to the father? He talked to him, and the testimony in the record suggests that there was no indication that there was a language barrier. So he talked to him, not in Spanish, but he spoke to him probably slowly and loudly because that's what we all do. But his son was there. Was it because he was older or because he spoke Spanish? Well, I wasn't there, Your Honor. I'm just guessing. I know what I do. You did not let us know the difference. No, I'm just saying what I do. If somebody doesn't understand what I'm saying, I try to slow it down and I talk louder thinking that that's going to make a difference, but it usually doesn't. So what I'm trying to get at is, does the record show any conversation between senior and the agent? The answer is no. I don't believe that question was asked. Oh, okay. So they never talked to him. Was there a binding effect by the trial court as to who signed the application? Not that I was able to see. I read through the trial transcript and the order, and I believe that the testimony at the trial was that the son signed on his father's behalf, in his presence, but on his behalf. And was that in the presence of the agent? Yes. So when founders received the upload or the fax, they had a signed application that had information on it, and based upon that information that was faxed over or uploaded over by Mr. Flores' agent, they issued the policy. But then they realized, as I was saying, that there was a 17-year-old undisclosed driver in the household, and he was the one who was involved in this accident involving fatalities. After learning that this gentleman was a household member, they conducted their investigation and realized that this son had not been disclosed to them, although he was a licensed driver in the household. And the application requires the applicant to disclose all members of the household aged 15 years or older, whether they're licensed or not. And the trial court found that the application clearly requires this. Is there a place on the application to fill that out? Yes. There are two places. It doesn't matter if he's licensed or not. Is that on there also? The application requires the applicant to disclose all people in the household aged 15 years or older or regular drivers. Let me... That's in the record. That's the question. Yes. The application is all over the record. But the complaint that Founders filed stated that the misrepresentation was material. It was material to the tune of $1,100 and change, and that Founders rescinded based upon those facts. What Founders did in this case, Your Honors, is completely consistent with Illinois law and with Section 154 of the Insurance Code. The misrepresentation, even if innocently made, if it is material to the risk, will justify the rescission of the policy. Also, the only evidence of record in this case, as I stated, is that the Huffman agency and Mr. Williams were independent agents who were acting for the benefit of the customer, which in this case were the Flores individuals. So they weren't acting for the benefit of the insurance company. That's correct. That is correct. So who pays the commission? The insurance company? The agents are paid a commission of the premium, but all agents are. They have to make a living, and that's how they make a living. But there is no agency relationship between founders and any of these agents that offer its products and the products of numerous other insurance companies. They're independent agents who are put in motion by the customers that walk through their door. So all Founders knew, Your Honors, is what it saw on the application. All it based its decision to write this risk was what it saw on the application. But they then learned that they weren't told everything that they should have been told, and that was requested on the application that was signed by Mr. Flores or his son on his behalf. So the trial court found that the agent was an independent agent acting on behalf of the customer, but then found against Founders. And that, Your Honors, is the reversible error in this case. The court in Farmers v. Gittleson, the agent in that case was Miles and Finch. That was the name of the agency, and I cite this case in my briefs. And what the court in that case held was that Miles and Finch were the agents of the customers, not Farmers. They were the agents of the customers, and that anything that Miles and Finch did or any representations that Miles and Finch may have made to the customers about coverages or policy limits could not be attributed to Founders. So while the trial court in our case found that Williams and the Huffman agency probably should have done more than they did in explaining things to Mr. Flores while he was in their office, this could not be attributed to Founders because the court made no findings and there was no evidence at all in the record at any time that the Huffman agency or Mr. Williams were agents of Founders. They had no agreement, no contract with Founders at all? They had a written... What's in the record? It's not in the record of any... They had guidelines, and the underwriter from Founders, Nancy Roachwick, testified that the folks who offer their insurance products operate within certain guidelines. Like, this is acceptable, this isn't acceptable. So if this exists, for example, if they use their car for Uber, don't submit it because we're not going to insure that person. So it's guidelines, but they're not their agent. I mean, the Huffman agency... Yes. Yes, it is possible. Yes. Those four factors are who set the agent in motion, who controlled the agent's actions, who paid the agent, and whose interest the agent was protecting. Are those the correct four factors, as you understand? Yes, they are, Your Honor. And was that analysis performed by the prosecutor? It's... Those four factors and whose agent the Huffman agency was acting under. I could not tell from the trial transcript or from the court's written opinion that it went through that specific analysis. But what I do know is that the only evidence presented at trial is that the Huffman agency and Williams were independent agents acting on behalf of Mr. Flores at the time of the application process. Is there sufficient evidence in the record that this court can make the analysis of those four factors? Yes, Your Honor, there is. Flores walked through the door of the Huffman agency to get insurance for, I believe, four vehicles. He set the agent in motion. Based upon what Mr. Flores told Mr. Williams during the application process, Mr. Williams calculated through his rating system or quote system which insurance company would be most suitable for Mr. Flores. Mr. Williams could just as easily have placed Mr. Flores with American Access or Apollo or Safeway or take your pick of the other non-standard insurance companies. But based upon the rates that founders offered to these individuals, he thought that founders would be the best fit for these customers. Now, while it's true that the Huffman agency, as with any agency, is paid from commissions from the premiums that the insurance company receives from the insurance, this isn't the same thing as being able to control their actions. I mean, certainly founders can't fire somebody at the Huffman agency because they came in late for work consistently for three weeks. They can't exercise any control over these people. They could simply stop doing business with them, but it's not the same thing as controlling them. That's true of any agent, Your Honor. Who controls the agents, overcomes Section 3. Am I jumping around? No, I'm trying to make clear which factors favor and oppose. Oh, okay. Okay. Flores set the agent in motion. Flores controlled the agent's actions by either going with them or not going with them. Who paid that individual? Who paid the individual? As I've stated consistently, the agent was paid through commissions, as they all are. And number four, whose interests the person was protecting, clearly Huffman was protecting the interests of Flores in looking for the most competitive rate that he could find for these customers. Okay. Thank you, Your Honor. Counsel for Appellee. May it please the Court, my name is Chad Orso. I represent Beverly Trexler, who is the administrator of the estate of Nicole Charles and Madison Stone, and Amy Cash, who individually and as the mother of Taylor Cash. I want to clear some things up about what was said and about the facts. Could I suggest you speak up because Justice Gates is unable to attend and it's being recorded. All right. When Martin Flores entered the insurance, Eric Huffman's insurance agency that day, he was accompanied by, I believe, his 13-year-old son, Hugo. He was 13 at that time? I believe he was 13 in 2011. At that point, Mr. Huffman spoke with him. The application was preprinted. Mr. Flores did enter the Huffman insurance agency with a piece of paper. But as was testified by Martin Sr., that paper only had the same information that his previous car insurance had. So he took the information that his previous car insurance had on a piece of paper to the new agent. Martin Flores was an individual who spoke rare English, was not very good in English. He had no schooling whatsoever. He could not read or write in English or in Spanish. The most that he could do was sign his name and printing it, but he could not write in person. And he was adamant about that. In this situation, the application had never left the building, so no one was allowed to review it. He was not given a form that could be provided in Spanish. Apparently, as through trial date, Founders possesses a phone number for individuals who are Spanish-speaking to call, but no one ever provided that number either before or after the application process. So he was not aware of the 15-year-old or of Martin Sr. having to be on the insurance because no one informed him of that fact. I'm confused about the 15-year-old. And you just said 13-year-old. I got confused, Your Honor, yes. I was told by other counsel that the driver was a 17-year-old. Was he a third child or was he confusing ages? Confusing ages. From here on, I'll refer to him as Hugo because that's who he was. So how old was he at the time of the application? I believe he was 13 at the time of the application. I think that's what the father testified to at the time of trial. Was he the same one that was involved in the accident? No, that was an older son, Martin Flores Jr., who was 17. So it's just Hugo and Martin. I believe there's others that are either not living or even younger than those two. Okay, so they're not relevant to the case. Right. In the process, no one ever spoke to Martin Sr. in Spanish about this. And the reason why I also say about this in terms of there was no investigation by founders for the insurance application. During direct testimony of Mr. Huffman, founders counsel Kevin Clark asked Mr. Huffman, Well, there's four vehicles. You should have known that there was a problem when there was only two drivers. In this case, however, on the insurance application itself, founders actually puts in there right above the signature line where the applicant is supposed to sign that states, we reserve the right to hold any ability to investigate this application to make sure that it's accurate. They failed to do so. Only time they decided to investigate this accident is after the accident occurred. Regarding the request to admit, founders sent Martin Flores Sr. and his son a request to admit long before the case was ever decided. The judge had ruled that they must translate that into Spanish before they are to answer. They failed to do so. In fact, the requests were signed by Martin Flores but only after his discovery deposition was taken in which all the questions in the request to admit had been answered by Martin Sr. saying that this was not his signature. So in going into trial, Kevin Clark had the ability when he was cross-examining Martin Sr. to deem those facts admitted by the trial court and he did. He used those requests to admit in an attempt to impeach Martin Sr.'s testimony but he never actually asked the court to deem those facts admitted and he never from there just said these were admitted. He went to the trial court to try to argue the facts as presented by Martin Sr. So in reality, the application was not signed by Martin Sr. It was signed by someone else and the court and founders are now making the assertion that the applications and seniors should be held responsible for those misconceptions when he was not the one who actually signed the agreement or even wrote it because it was done on a computer by Mr. Huffman. Well then, doesn't that bring us back to the question under the Gibbleton case, was it his agent? Yes. And if it had been an agent, so how would you respond to counsel's argument? I would say that the agent in this situation had unequivocally made himself an agent or founder or was acting on behalf of founders in this situation. Yes, Mr. Flores entered the building, Huffman Insurance Agency. But from there, Mr. Huffman only, and I believe this was in his discovery deposition, he changed his story multiple times. In his discovery deposition, he stated that he only looked at founders because founders was the lowest price. At trial court, he said, well, I looked at somebody else. Well, his was the standard practice. When asked for evidence of that, he could not produce evidence that he did that or any examples where he actually had done that for Martin Sr. Secondly, in his discovery deposition, he unequivocally stated, when asked, who are you an agent of, and he said, founders. And when asked, do you work for them, he said, yes. He said it at the beginning of his deposition, and he said it at the end. That was never objected to. That was never disagreed upon by founders' counsel, who was there at the deposition the entire time. The only time it changed was after he spoke to plaintiff's counsel right before trial. No, that was not. There has been multiple counsel in this situation, I believe, at least four defense attorneys, including Ms. Schoenheim. So I'm not saying that was what she did, but that was what other counsels, four founders, did at the time. Yes, because I had attached those discovery depositions and not only the motions for summary judgment, but also the motions to reconsider, I believe, as well. So I think when you look at those four factors, the record is, in my opinion, states that Mr. Huffman was working for Founders Insurance Company at the time. Ms. Schoenheim, excuse me if I'm mispronouncing your name. Just establish that that's the correct thing to do. Usually I'll say it one way and then I'll turn around and say it another way. But that she was saying that Martin Flores told Mr. Huffman this information, that's not entirely correct either. In the record, all Martin Flores did was just hand him the piece of paper. So it is, of my opinion and my client's opinion, that yes, I'm not saying Martin Flores holds no blame in this. I'm not saying Mr. Huffman doesn't hold any blame in this. But what we're also saying is that the reason why this was not fully hatched out was because also Founders did not do everything that they should have done as well in the contract. And because of that, until they waited until after the fact, and they waited until after three people were dead before they decided to investigate this and rescind the contract. Do you have any questions? No other questions. Thank you. Your Honors, Counsel misspoke when he said that the application that was signed on behalf of Mr. Flores states that Founders reserves the right to investigate the information disclosed on the application. It does not say that. It does not say that. Illinois law allows insurance companies to conduct post-occurrence underwriting. That's the law. And that's what Founders did here. So there's nothing on the policy about investigating? No. What the application says is if we learn that any of the information on this application is false or fraudulent, we will actually… How would they learn that if they didn't investigate it? They learned it after the undisclosed driver was driving a car in the household. They learned that. Right. Right. And, yes, Founders also, as with any insurance company, has the right to rely on the truthfulness of the information disclosed in an application. Well, the question, I think, is who disclosed the information in the questionnaire? Who disclosed it? He had a piece of paper with serial number and names, two names and two serial numbers. That was provided by Mr. Flores, Sr. Right. I understand. That's all they had. What else did they have? That was the only thing that the record disclosed that he had in his possession was that piece of paper and his 13-year-old son with him. But… It doesn't disclose that he understood anything or said anything, does it? But it doesn't say that he didn't understand. And he was present. The fact that the 13-year-old son may have signed this application because his father could only print and maybe they were told that it has to be signed… So who would have told him that? Probably Mr. Williams. What? Okay, when? Right. He may have signed it. Again, I wasn't there. In his presence? Right. It was done in his presence. It wasn't done covertly. So he would have seen the younger child signing the application. So the younger child, right, signed his name. He would have seen that. Right, and condoned it. And he testified to that, I guess. Well, I don't know that he was asked that. Oh, okay. I thought there was no evidence of who signed it except somebody else said that that was his younger son's writing. The undisclosed driver at trial said that it looked like his brother's signature. I know I saw that someplace. But, again, this wasn't an act that happened surreptitiously or behind a closed door in secret or private. It was done out in the open in front of the person on whose behalf this document was being signed. Mr. Flores wanted to get insurance. In order to get insurance, the application had to be signed. So they accomplished that, and then it was sent to founders. Your Honors, I have to stress that counsel for the Trexler parties did not introduce at trial or at any time in the litigation any evidence at all that Hoffman or Williams were founders' agents. Now, while Mr. Williams may have said in his deposition that he was the agent of founders, that bit of testimony or evidence in the deposition served as cross-examination material at trial. But at trial, which is what the trial judge based his ruling on, the evidence was that he was an independent agent. Counsel had every opportunity to cross-examine him and say, Well, didn't you say at your deposition this? I'm assuming he did that, but the trial court still found that this agent was an independent agent. Williams should have done more. No finding at all as to founders, but we're going to rule against founders anyway. And it is founders' position that that ruling was not consistent with the court's findings under Illinois law, and we're asking that the judgment be reversed. Thank you, counsel. The court will take the matter under advisement and issue its decision in due course.